Samuel W. Eager, J.
There is here before this court the matter of the final judicial settlement of the account of a substitute testamentary trustee, and there is required a determination as to the final disposition of the share of the testator’s estate which was held in trust for the benefit of his daughter, Edith Esselstyn, for her life.
The testator’s will was executed in 1883. He died in 1886 and his will was thereupon duly admitted to probate by the Surrogate’s Court, New York County. The will bequeaths several legacies in stated sums, including a bequest for the life benefit of the testator’s mother; bequests to each of two named sisters, with gift over to the ‘‘ surviving children ’ ’ of each in the event any such sister did not survive; a bequest to ‘ ‘ such of the children ” of a deceased sister as survive the testator; a bequest to “ Joseph, son of James H. Weller if he survives me ”; and a bequest to a nephew, son of testator’s sister, Cecelia Gr. Ball, “ in case he survives me ”.
The will further makes certain provisions for the testator’s wife. Then, the residue of the estate is disposed of by paragraph “ Ninth ” of the will, reading as follows;
“ Ninth — All the rest, residue and remainder of my estate of every kind and nature and wherever situated, I give, devise and bequeath to my Executors, hereinafter named, in trust for the following purposes: — To safely invest the same and pay to my wife, the income of one-third of said estate, during her life, and after her death the principal sum shall be divided among my sons and invested for my daughters in the same manner as is hereinafter provided for their shares of my residuary estate.
“ The remaining two-thirds of my residuary estate shall be equally divided among my children, the shares of my sons to be paid to them respectively as they arrive at the age of twenty-one years, and the income of the shares of my daughters respec *368 tively to be paid to them during their lives. And at the death of any of my daughters her share shall be divided equally among her legal representatives. During the minority of any of my said children, the income of its share of my estate or so much thereof as may be necessary may be applied to the support, maintenance and education of such child.”
The testator was survived by his wife and by his four children, Alfred Weller, Joseph F. Weller, Edith Esselstyn and Lillian Tompkins. Subsequently his wife died, and the residue set up in trust for her benefit was divided into four parts, with two of the parts paid to the sons and the other two parts invested for the daughters, as provided for in said paragraph “ Ninth ”. In 1944 Lillian Tompkins died leaving four children, and the principal of the portion of the trust allotted to her as life beneficiary was paid over to her children in equal shares. Edith Esselstyn died August 25,1955 without having had any children born unto her, but leaving surviving her a husband, Robert Esselstyn, and an adopted son, Leonard Hills. The question which now arises is, who takes the remainder of the Edith Esselstyn trust as ‘ ‘ her legal representatives ’ ’; or, is there an intestacy as to such remainder 1 The adopted son of the said life beneficiary claims the remainder, and the surviving husband, conceding that he may not take under the terms of the will, says the remainder goes to the said adopted son. The blood relatives of the testator, however, claim that the said adopted son may not take, contending that either the remainder passes to them as nearest blood kin of the said life beneficiary, or, in the alternative, that there is a partial intestacy.
Now, in the ordinary course, the duly qualified executors or administrators of a person take as his legal representatives upon his death, and the term “ legal representatives ” when used in a will or a grant is to be accordingly construed unless the context of the instrument and the surrounding circumstances clearly indicate a different meaning. (See, Rockland-Rockport Lime Co. v. Leary, 203 N. Y. 469, 482; Griswold v. Sawyer, 125 N. Y. 411; Dwight v. Gibb, 145 App. Div. 223, 227; Matter of Worms, 159 N. Y. S. 732.) However, the context of the will here before the court indicates that the testator did not use this term in its ordinary sense. The direction that the “ share ” of each daughter “ shall be divided equally” among her legal representatives leads to the conclusion that the testator, when he used the term “ legal representatives ”, did not have in mind her executors or administrators. Such a direction, that is, a direction to divide equally, calls for a final distribution of the share to the designated beneficiaries, and is inconsistent with *369 the payment of the same to the daughter’s executors and administrators as such.
In any event, it is clear that it is the duty of the court to ascertain, so far as possible, and to give effect to the intent of the testator as disclosed by his will as a whole, with a consideration of the facts and circumstances existing when the will was drawn. (Matter of Upjohn, 304 N. Y. 366, 375.) And, it is important to note that it is to be presumed that the testator intended to dispose of his whole estate. (Johnson v. Brasington, 156 N. Y. 181.) This presumption is particularly strong where the property in question is part of the residuary estate. (Matter of Birdsell, 271 App. Div. 90, 95.) We may assume that the testator intended that the provisions of his will were to be legally effective to dispose of his entire residuary estate so that there would not be an intestacy as to any part thereof. (Schult v. Moll, 132 N. Y. 122; Matter of Hayes, 263 N. Y. 219, 225.) Therefore, it is important to further note that there is in this will no gift over, and thus, we may assume that the testator intended that the “ share ” of each daughter was to be fully and effectively disposed of on death of each by the provision that the “ share ” was to be then divided “ among her legal representatives Consequently, we are to give the term “ legal representatives ” a broad and liberal meaning; and the term is not to be construed to mean “ children ” or “ issue,” or “ blood descendants ”, as contended for by the blood relatives of the testator. In the use of the term “ legal representatives ” by this testator, it is concluded that he had in mind the persons who would legally succeed to the personal estate of the daughter on her death, that is, the persons who would then take under the statutes of distribution. Such a construction seems to be called for by a consideration of the will as a whole, and finds support in the authorities. (See Drake v. Pell, 3 Edw. Ch. 251, 270; Griswold v. Sawyer, supra; Davidson v. Jones, 112 App. Div. 254; Lee v. Dill, 39 Barb. 516; Matter of Ackerman, 137 Misc. 910.)
That the testator intended that the share of his said daughter, Edith Esselstyn, be finally vested in her legal distributees at her death is particularly borne out by the wording of the will. It appears therefrom that, on the death of his wife, the testator intended to divide the residue of his estate equally between his four children. He calls the parts of his estate to be paid to his sons when they respectively arrive at age 21 as the ‘ ‘ shares of my sons ”, and he speaks of the estate to be held in trust for each of his daughters as their “shares ”. Then, he says that on the death of each daughter, her “ share ” shall be divided among her legal representatives. Thus, it appears that it was *370 the intent of the testator that an equal one-fourth part of the residue of his estate was to be allotted and set over for the benefit of each child, with no one child to receive more nor less, subject, however, to provisions for postponement of time of payment over of the principal of each “ share ”. To construe the will in a way whereby the ‘ ‘ share ” of a daughter would ultimately pass to other children of the testator or their issue, or to declare a partial intestacy having such effect, would result in such other children or their issue receiving more than their respective “ shares ” of the testator’s estate and tend to nullify his plan for equal distribution.
It is noted that the testator, in earlier provisions of his will, specifically used the term “ children ” in connection with certain legacies, and, therefore, it is significant that the testator did not use the word “ children ” or other expression limiting the class of beneficiaries who were to take a daughter’s share on her death, that is, if he did so intend. The testator’s daughters were mere children of tender years when he made his will, and he naturally would have in mind the possibility of one or both of them eventually dying without leaving children or descendants, so he used the broad term “ legal representatives ”. Under all the circumstances, therefore, I find not particularly relevant or helpful the decisions cited by counsel to the general effect that the terms " children “ issue ” or “ lawful issue ” when used in a will or other instrument, are generally to be construed to mean children or issue of the blood and do not include an adopted child. (See New York Life Ins. & Trust Co. v. Viele, 161 N. Y. 11; Matter of Nicol, 3 Misc 2d 898; Matter of Hilts, 5 Misc 2d 862; Matter of Holt, 206 Misc. 789; Matter of Cuddeback, 174 Misc. 322; Matter of Price, 4 Misc 2d 1026.) I also have noted, of course, those decisions indicating that the term “ legal representatives ”, when used in a will, may have the same meaning as the term “ representatives ” as used in section 83 of the Decedent Estate Law and, thus, may be construed to mean lineal descendants. (See, for instance, Dwight v. Gibb, 145 App. Div. 223, 227, supra; Greenwood v. Holbrook, 111 N. Y. 465.) There is, however, nothing in any of said decisions to solidly support a contention that the term is to be limited to meaning blood descendants to the exclusion of descendants through adoption. In fact, as hereinafter pointed out, an adopted child is, for purposes of taking by representation, considered a descendant of his adoptive parent.
The testator knew, of course, that the persons to take as the “ legal representatives ” of a daughter would not be determined until the time of her death. The fact is, he expressly directed *371 that the division among them was to be made “ at the death ” of the daughter. No one would know who her legal representatives or distributees would be until her death. So here, the general rule is to be followed, namely, the rule that a remainder bequeathed to the distributees of the life beneficiary is to be distributed to those persons who qualify as distributees as of the time of death of the life beneficiary and under the law as it then exists. (Gilliam v. Guaranty Trust Co., 186 N. Y. 127; Matter of Waring, 275 N. Y. 6, 10; Matter of Evans, 135 Misc. 656; Matter of Canfield, 136 Misc. 551, affd. 231 App. Div. 708, affd. 256 N. Y. 610; Matter of Mackie, 202 Misc. 795; Matter of Maine, 190 Misc. 226, 233.) “ The general rule * * * is well established that when property at a future date is to pass to a certain class of persons it will be distributed amongst the persons who compose such class at the date of distribution.” (Gilliam v. Guaranty Trust Co., supra, p. 133, citing cases.)
It is determined, therefore, that the portion of the residuary estate held in trust for the daughter, Edith Esselstyn, now deceased, is to pass to her distributees to be determined as of the date of her death. The question remaining, however, is whether or not the adopted son, now a distributee, is entitled to take under this will drawn in 1883. Now, the primary interest of the testator was to ultimately provide for his children, including provisions for his daughters down to the times of their respective deaths, and, thereupon, he did exhaust his specific desires. He was satisfied to have the respective shares of the daughters thereafter pass to such persons as would legally succeed to their respective estates. He was not particularly concerned with the relationship to his respective daughters of the persons who would take when each did die. He was content to have the “share ” of each daughter pass as if she had owned it completely in her lifetime. (Matter of Cohn, 184 Misc. 258, 264, affd. 271 App. Div. 775, affd. 297 N. Y. 536.) He wanted the ‘‘ share ’ ’ of each to pass to her representatives, whoever they might be. ‘ ‘ He threw the responsibility of selection upon the law ”. (Gilliam v. Guaranty Trust Co., 186 N. Y. 127, 138, supra.) “ Let it go as the law directs ”, he, in effect, said. (See Matter of Bump, 234 N. Y. 60, 66.) The use of the word “ legal ” is a clear indication that he expected the respective shares to pass in accordance with the representation determined by law. We may assume that he knew that the manner of distribution of a decedent’s estate was governed by statute and could, at any time, be changed. He took his chances that the statute might be changed and that events might come about, whatever they might be, tending to have an effect upon the ultimate disposition *372 of a daughter’s share. (See Gilliam v. Guaranty Trust Co., supra.) As it turned out, the statute was changed to bring adopted children within the class of statutory distributees entitled to take intestate property. Furthermore, an event having a particular bearing on the matter did occur, namely, the daughter Edith, adopted a child instead of having one or more by way of natural birth.
It is noted that it is the policy of the law that adopted children be placed on a level with natural born offspring. (Matter of Upjohn, 304 N. Y. 366, 374, supra; Matter of Mawhinney, 146 Misc. 30, 33.) I see no good reason to exclude the adopted son of the daughter, Edith Esselstyn, from the class of legal representatives entitled to take this daughter’s share in the testator’s estate. By law, he is a distributee of her estate (see Domestic Relations Law, § 115; Decedent Estate Law, § 83, subd. 14) and I see nothing in this will to indicate that his taking would contravene the testator’s wishes. There are decisions, too, tending to support a determination here in favor of the adopted son. (See Gilliam v. Guaranty Trust Co., supra; Matter of Charles, 200 Misc. 452, affd. 279 App. Div. 741, affd. 304 N. Y. 776; Matter of Hecker, 178 Misc. 449; Matter of Cohn, supra; Matter of Mackie, supra.) And, even if we were to limit the term “ legal representatives ” as used in the will here to the meaning ascribed to such term as used in section 83 of the Decedent Estate Law, namely, to mean descendants of the daughter, Edith Esselstyn, nevertheless, her adopted son would take. This is so, because as heretofore pointed out, the members of the class of persons who would take as legal representatives is determined as of the date of death of said daughter and as of such time, an adopted child was considered a representative of his parent within the meaning of such term as used in said section. In determining the manner of devolution of the property of a decedent, an adopted child is generally to be considered as a descendent of his parent. (See, for instance, Matter of Cook, 187 N. Y. 253, 261; Matter of Walter, 270 N. Y. 201.) “ The line of descent is the course that property takes according to law when the owner dies. By force of the statute that course is the same in the case of adopted children that it is in the case of own children. In the eye of the law, therefore, adopted children are lineal descendants of their foster parent.” (Matter of Cook, supra, p. 261, per Vann, J.)
Now, there is also some uncertainty as to the rights of the surviving husband of the testator’s daughter. Notwithstanding section 47-c of the Decedent Estate Law does not apply, there may be a question as to whether or not such surviving *373 husband is also entitled to share in the remainder as being among her legal distributees. (See Matter of Waring, supra; Matter of Koch, 282 N. Y. 462; Matter of Bates, 173 Misc. 703; Matter of Maine, supra.) It is unnecessary, however, to consider this question, as he, by his attorney, claims no portion of the remainder and, by the written brief filed with the court, expressly concedes that the remainder should entirely go to the adopted son of the daughter. (See Griswold v. Sawyer, 125 N. Y. 411, 418, supra.)
In view of the foregoing, the decree hereon shall direct payment of the corpus of the Edith Esselstyn trust to Leonard Hill, her adopted son.
Settle decree on eight days’ notice. Allowances will be fixed on settlement of the decree, but all applications for allowances must be supported by affidavits of usual form and contents, such affidavits to set forth the amount requested by way of allowance and such affidavits are to be served on opposing counsel at least five days prior to settlement of decree.