Maximilian Moss, S.
The Bank of New York is accounting as trustee of three trusts created under paragraph “ Fifty-fourth ” of testator’s will. As an incident thereto it requests a construction of the third trust to determine whether it is to be continued for the life of Anna Walker as secondary income beneficiary.
Testator died April 24,1912. By the provisions of paragraph ‘ ‘ Fifty-fourth ’ ’, testator named his daughter, Carolyn H. *161 Bassett, primary life income beneficiary of three trusts, each being in equal amount; Carolyn’s son, Hulbert D. Bassett, as secondary life income beneficiary of the first trust, and Carolyn’s daughter, Elizabeth H. Bassett, as secondary life income beneficiary of the second trust. As to the third trust he provided as follows: “ and after her (Carolyn’s) death to pay over the income thereof to Iver third or other child besides said Hulbert D. Bassett and Elizabeth H. Bassett, if any such child shall be living at the time of my death, during his or her life, and after his or her death to pay over the principal sum thereof to such person or persons as the said child may by his or her last will and testament direct or appoint.” (Emphasis supplied.)
At the execution of testator’s will Carolyn had only the two children mentioned in the will, and thereafter no other child was born to her. On July 30,1920 Carolyn adopted Anna Walker, who was born in 1902 and is still living. Carolyn died on April 20, 1959.
The primary question presented is: Does Anna Walker answer the description prescribed by testator of the person who is to receive the income of the third trust after Carolyn’s death? If she does, it becomes the duty of the trustee to continue such trust for her benefit for life. If she does not, then concededly the trust terminated by the death of Carolyn on April 20, 1959, and the fund should be distributed as provided under the will.
It has been held that wills must be construed in harmony "with the legislative policy of placing adopted children on the level with natural-born offspring. The Court of Appeals in Matter of Upjohn (304 N. Y. 366, 373-374) summarizes the fundamental social concept of our adoption statute, thus:1 ‘ By reason of that provision [Domestic Relations Law, § 115, 3d par.], we have held, 1 the adopted child, in a legal sense, became the natural child of the adoptive parent.’ (Carpenter v. Buffalo Gen. Elec. Co., 213 N. Y. 101, 108.) ‘ In the eye of the law, therefore, adopted children are lineal descendants of their foster parent. They are in the line of descent from him through the command of the statute, the same as if that line had been established by nature.’ (Matter of Cook, 187 N. Y. 253, 261.) In harmony with the legislative policy thus expressed, the adoption statute has been most liberally and beneficiently applied. * * * By the same token, a foster child, adopted subsequent to the execution of its foster parent’s will, has a right, as a ‘ child born after the making of a last will ’, to an intestate share of the parent’s estate if no reference is made to him in the instrument. *162 (Decedent Estate Law, § 26 ; see Matter of Guilmartin, 277 N. Y. 689 ; Bourne v. Borney, 184 App. Div. 476, affd. 227 N. Y. 641.) ” At page 375, the court said: “Where the testator’s design to include an adopted child is clear, the limitation will be construed to effectuate that intention.” (See, also, Matter of Ward, 9 A D 2d 950 ; Matter of Day, 10 A D 2d 220 ; Matter of Weller, 7 Misc 2d 366.)
The will itself, read in its entirety, contains clear signs that testator did not plan to limit the disposition of his property within the bloodlines. Paragraphs “ Forty-fifth ” and “ Forty-sixth ”, for example, bequeath $100,000 to each of testator’s two sons-in-law. Under the same paragraph which created the trusts for Carolyn, they are remaindermen of one sixth of the trust created thereunder for the benefit of testator’s widow. They are also substitutionary life beneficiaries under certain circumstances of six of the other trusts set up thereunder. In 11 of the 12 trusts established under paragraph “ Fifty-fourth ’ ’ — the only other trust thereunder being the aforementioned trust for the widow—The primary life beneficiary or, where there are two successive beneficiaries, the secondary life beneficiary, was empowered to dispose of the remainder of his or her trust to such person or persons — no limitation appearing in the will—as he or she might appoint by will. In large measure testator designated his ultimate life beneficiaries as the ones who were to select the ultimate objects of his bounty upon the termination of the trusts without any limitation or suggestion that they be of his blood. Testator’s will exhibits no indication of an intention by him to designate only persons related by blood to him and the will shows no intention to exclude an adopted or other child of his daughter from sharing therein (Matter of Cohn, 297 N. Y. 536 ; Matter of Charles, 200 Misc. 452, affd. 279 App. Div. 741, affd. 304 N. Y. 776 ; Matter of Walter, 270 N. Y. 201 ; Matter of Lynde, 28 Misc 2d 174).
The court reads the will as evidencing testator’s intention to include within his concept of the ‘ ‘ third or other child ’ ’ of his daughter Carolyn a child adopted by her who would be living at the time of testator’s death so as to obviate the invalidity of the gift by reason of the Rule against Perpetuities.
Carolyn’s two surviving children named in the will contend that by the use of the phrase ‘ ‘ her third or other child ’ ’ living at his death, testator meant to include only á child of the blood and since their mother had no such third child the trust by its term terminated at her death. The court holds otherwise inasmuch as testator did not limit the payment of income to Carolyn’s third child of the blood living at his death. It follows *163 that Anna Walker, as an adopted child of Carolyn H. Bassett living at testator’s death, answers the description prescribed in paragraph ‘' Fifty-fourth ’ ’ of his will and as secondary life beneficiary thereof is entitled to the income of the third trust. The provision in controversy being so construed renders all other questions presently academic.