In the Matter of the Estate of HORACE GREEN, Deceased.

Surrogate's Court, Nassau County, March 2, 1967.

*Willkie, Farr, Gallagher, Walton & FitzGibbon* (*Ethan Allen* and *Kenneth L. Beaugrand* of counsel), for petitioners. *Nathaniel Taylor,* special guardian for Eleanor S. Green, an incompetent, and others, infants.

JOHN D. BENNETT, S. In this proceeding to settle their account the trustees ask for specific instructions regarding certain funds for which they charge themselves separately as principal in a reserve account, now totaling $4,915, divided pro rata among five residuary trusts.

Petitioners also ask for instructions as to the disposition of future receipts in the same category, whether they should be credited by the testamentary trustees to principal, income or to a reserve account.

In his lifetime testator set aside $25,000 as grantor under a trust agreement with New York Trust Company as trustee, providing for investment of principal and payment of the income "up to the amount of $1,225 per year, net after commissions and expenses" to a Mrs. Loveland who had served as companion to the decedent's mother. The trust agreement specified that such net income, limited to that amount, "shall be paid to Mrs. Loveland quarterly until her death; and, after her death, * * * the income up to such net amount of $1,225 per year" to Mrs. Loveland's sister, a Miss Pollock, "until the termination of the trust by reason of her marriage or death. The *balance of the income,* less expenses and commissions, shall be paid annually to the Grantor, Horace Green, or, *after his death, to his legal representatives*" (art. IV of the trust agreement dated January 22, 1927, emphasis supplied).

By a collateral agreement with Mrs. Loveland made the same date as of the *inter vivos* trust indenture, the decedent bound himself and his estate to guarantee that the income of the trust would always be sufficient to pay the said minimum amount. This court's decree made October 19, 1948 upon the settlement of the executrix' account held that the said agreement "is binding upon the estate * * * and is a contingent, continuing charge against the principal of the residuary estate". Distribution was then ordered to these trustees of the residuary subject to that continuing liability, "to be met if required pro rata out of the principal of the respective trusts" (quoting from the decree).

The two beneficiaries mentioned are still alive, one being 94 and the other 89 years of age. The principal of the *inter vivos* trust has since increased to about $68,000 and the income has

regularly exceeded the requisite amount each year since 1954. Following the direction above mentioned, the *inter vivos* trustee has been paying over the excess income annually to these testamentary trustees, presumably recognizing them in the place of "legal representatives" of the decedent.

It is argued from the express direction as to payment of excess income contained in the *inter vivos* trust agreement coupled with the disposition by the will of the reversionary interest that the grantor-testator intended to distribute the said income in the same manner as the income of his residuary trusts, to wit, through the testamentary trustees to the beneficiaries thereof as income.

All the parties before the court, including the special guardian, have urged the court to implement that supposed intention by directing the distribution of the accumulated reserves as well as future excess income directly to the trust beneficiaries as income. On the other hand, the will was very carefully and expertly drawn to limit the cash distributions to the children, giving them only the income of the residuary besides the cash bequests in Article Second.

In the opinion of this court the testator did not make an adequate direction in his will disposing of the excess income of the *inter vivos* trust *as income,* but in clear terms actually disposed only of his "reversionary interest" therein. The instrument creating the *inter vivos* trust also in clear language disposed of the excess income to the grantor and upon his death to his legal representatives. In the absence of any circumstances indicating the contrary, "legal representatives" refers to executors and administrators (*Matter of Weller,* 7 Misc 2d 366). While the excess would have constituted income to the testator (grantor) during his lifetime, upon receipt thereof in the hands of his executor or other personal representative after his death, such payments necessarily become (and will become) part of the corpus of his estate and therefore principal of the residuary trusts.

The trustees are accordingly directed to credit the foregoing funds to principal, including the said sum of $4,915 and also future receipts of such excess income.

The court hereby approves and allows the resignation of Irving Trust Company as trustee and appoints First National City Bank as one of the trustees herein to serve in its place and stead, without bond, upon qualifying pursuant to law.

Upon submission of an appropriate affidavit of services, with proof of service upon the special guardian, the compensation of petitioners' attorneys will be fixed and determined.