Arthur G. Klein, J.
This is a proceeding brought under article 79 of the Civil Practice Act by United States Trust Com *675 pany of New York as trustee under a trust indenture dated July 22, 1935, made by Minnie E. Nicol, for the settlement of its account for the period from the inception of the trust through December 4,1961, for construction of the provisions of the trust indenture and adjudication as to distribution of income and principal and for other relief.
The basic question presented for determination by the court is whether the term ‘£ issue ’ ’ as used in article First, subparagraph 2 of the Minnie E. Nicol Trust Indenture which reads as follows:££ One (1) share unto Alexander Kenneth Nicol (son of said Minnie E. Nicol) and in event of his death, unto his issue in equal shares ” includes adopted persons and the descendants of such persons.
By the terms of the trust indenture New Jersey law is to be applied in the construction and regulation of the instrument.
The essential facts involved in this proceeding are contained in the stipulation of the parties and the special guardians and in the opinion of the court in Matter of Nicol (3 MisC 2d 898).
The decisional law of New Jersey clearly holds that a provision for the ££ issue ” of another is presumed not to include an adopted child or children. (Matter of Wehrhane, 23 N. J. 205.) There the facts are almost identical with those in the case at bar. In Wehrhane, the testatrix executed her last will on January 5, 1925, and died two months later, leaving her husband and their only child Dorothy, surviving. The testatrix directed that the residue of her estate be placed in trust and named her husband as a life beneficiary, and upon her husband’s death, the income was to be paid to their daughter Dorothy, and upon the death of the daughter, the principal and any accumulations were to be paid over to the issue of the daughter per stirpes absolutely. If the daughter should die leaving no issue her surviving, the principal shall be paid in specified proportions to the daughter’s husband, if living, to a named cousin of the testatrix, and to certain charitable institutions.
The daughter married in 1915, bore no children and in 1931, nearly six years after the death of her mother, adopted an eight-year-old son, John.
In an accounting proceeding, the adopted son, John, and his children claimed to be entitled to the trust corpus upon Dorothy’s death as her ££ issue ”. The trial court held that the word ££ issue ” as used in the testatrix’ will did not include adopted children. The Supreme Court of New Jersey affirmed the trial court’s decision, stating (pp. 208-209): ££ It appears clear, however, that the word 1 issue ’ was employed with something more than a passing consideration. The term in its normal usage *676 connotes progeny to the remotest degree, Stickel v. Douglass, 7 N. J. 274, 277 (1951), or descendants, In re Fisler, supra, 133 N. J. Eq. at page 423, and because it is not confined in this sense to one generation it emphasizes the thought of kinship or blood relationships. 3 Powell on Real Property (19-52), sec. 360; cf. 5 N. J. Practice (Clapp on Wills and Administration) (1950), sec. 124, p. 299. And absent a direction to the contrary, distribution to the descendants is always on a per capita basis, share and share alike, Hoyd v. Orcutt, 1 N. J. 454 (1949).”
The similarity of the facts in the instant proceeding and in Wehrhane is evident when we consider that in Wehrhane the testatrix did not know that her daughter had adopted a child as the adoption took place six years after the death of the testatrix. In the instant case, Minnie E. Nicol did not know of her son Alexander’s adoption of four adults as the adoption took place approximately 17 years after the creation of the trust and approximately 13 years after the death of Minnie E. Nicol. Alexander was unmarried when the trust indenture was executed. He did not marry until after the death of his mother. No issue was born to Alexander K. Nicol, and it was not until 1952, approximately 17 years after the death of his mother that he adopted the four children of his wife by a former marriage.
The court, in the Wehrhane case, rejected the argument that the question for determination should be resolved in the light of the claimed fact that today societal regard for the family relationship is based upon sociological environment rather than biological connection and in the light of the claimed fact that the common impulse of our time is to accept adopted children into the same realm of family affinity as the natural born.
Section 9:3-30 of the New Jersey Statutes, adopted by the New Jersey Legislature in 1953, effective January 1, 1954, does not apply in this proceeding. That statute reads in part: “ In the construction of any testamentary or other document executed subsequent to the effective date of this act, an adopted child shall be deemed lawful issue of the adopting parent unless such document shall otherwise provide.” In the Wehrhane case the court rejected the afore-mentioned sociological argument, and further pointed out that the Legislature had confined the application of such principle to instruments executed subsequent to January 1,1954.
Two other leading New Jersey cases, very similar factually to the instant case, also held that the term “ issue ” does not include an adopted child. Matter of Fisler (131 N. J. Eq. 310) reviews many of the New Jersey cases relating to the right of an adopted child to take property by statute or will and rejects *677 the argument that the Adoption Act of 1877 operates to create a capacity in an adopted child to take as a child or as issue under the will or trust indenture of some other person. (See, also, Fidelity Union Trust Co. v. Potter, 8 N. J. Super. 533.) The Fisler and Potter cases are both cited with approval in the Wehrhane case.
The circumstances surrounding the creation of this trust do not rebut the presumption that the term “issue” does not include an adopted child. Under New Jersey law the circumstances to be considered in ascertaining the grantor’s intention are those surrounding the creation of the instrument. ‘ ‘ A will bespeaks testamentary intention as of its date. That intention, if possible, should be ascertained from the will itself, but this does not preclude proof and an examination of the circumstances surrounding the execution of the will ” (Matter of Fisler, supra, p. 317). The same rule applied in the interpretation of a trust indenture. ‘£ Where the provisions of a trust indenture are not clear, to gather the intention resort should be had to the language used in the light of the surrounding circumstances existing at the time of the creation of the trust ” (Commercial Trust Co. of N. J. v. Adelung, 136 N. J. Eq. 37, 39-40).
The facts surrounding the creation of the present trust were previously examined by this court in the case of Matter of Nicol (3 Misc 2d 898 [Di Falco, J.]) which construed the trust indenture executed by the father of Alexander K. Nicol and in that case it was found that declarations and circumstances subsequent to the creation of the trust were utterly lacking in force and effect to establish the contention that the draftsman of the father’s trust indenture intended to include adopted children when he used the term “ issue”. Similarly in the instant case it cannot be determined from surrounding circumstances that Minnie E. Nicol intended to include adopted children in the term “ issue ”.
It is my conclusion and decision that the term “ issue ” as used in article First, subparagraph 2 of the Minnie E. Nicol trust indenture does not include the adopted children of Alexander K. Nicol and their descendants.
As to the remaining points presented for construction the following comprise the ruling and decision of the court:
It appears from the inescapable language used by the settlor in the distribution of income to the stirpital roots of her family requires that there be a distribution of income to issue per stirpes.
The question of determining how maxxy shares of principal there will be distributed by deciding who are the issue of Minnie *678 E. Nicol is premature at this time. Intervening deaths prior to the termination of the trust in 1975 precludes any determination as to the number of shares to be distributed. The court accordingly declines jurisdiction insofar as the construction depends on contingencies not presently determinable (Matter of Smith, 48 N. Y. S. 2d 378). A further construction will be available upon the termination of the trust.
Examination and settlement of the trustee’s account were deferred by stipulation until after the court had rendered its decision on the construction questions.
The trustee is directed to proceed in accordance with the foregoing.