In the Matter of the Accounting of the UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee of the Trust Created by ALEXANDER K. NICOL, Respondent. JOSEPH N. TAYLOR et al., Respondents; ALEXANDRA BOWDOIN et al., Infants, by W. SCOTT LONG, Their Guardian ad Litem, Appellants.

First Department, December 2, 1965.

*W. Scott Long,* guardian ad litem of Alexandra Bowdoin and others, infant appellants.

*Stanley F. Reed, Jr.,* of counsel (*Carter Ledyard & Milburn,* attorneys), for United States Trust Company of New York, respondent.

*Standish F. Medina* of counsel (*Medina & Miller,* attorneys), for Joseph N. Taylor and others, respondents.

*Italo H. Ablondi,* guardian ad litem of Paul N. Taylor and others, infant respondents.

*Richard Steel* for Frances M. Nicol, respondent.

STEVENS, J. This is an appeal from a judgment entered November 24, 1964 which construed article First of an indenture dated October 25, 1935 made by one Alexander Kenneth Nicol, and from an order entered November 24, 1964 which granted the motion of the guardian ad litem for the infant appellants for a rehearing and upon such rehearing adhering to the original determination.

This was a proceeding to settle and allow the petitioner trustee's account and also for a construction of a portion of the trust indenture dated October 25, 1935. The appellants are the 10 infant issue of the brother and two sisters of the person named as settlor in the trust indenture and the brief is filed by their guardian ad litem. Under paragraph First of the instrument, after providing for certain payments out of the income to named persons, it was provided that all of the income not disposed of would be paid to Alexander Kenneth Nicol (herein referred to as the settlor) and from and after his death divided and paid during the continuance of the trust as follows:

" One Third unto his wife (should he marry) if then living, and so long as she remains his widow, and the remainder (including said Widow's share in event of her death or remarriage before the final distribution of the principal, as hereinafter provided) unto his surviving issue (if any) in equal shares. Should he die without leaving a wife, but leaving issue, the said surviving issue shall receive and be paid the income in equal shares. Should he die leaving a wife, but no issue, said wife, so long as she remains his widow, shall receive and be paid one half of the income and the remaining portion shall be divided equally among and be paid to the then surviving issue

of his one brother and two sisters. Should he die leaving neither wife nor issue, the income shall be divided equally among and paid to the then surviving issue of said brother and sisters.

" Should said Widow die or remarry before final distribution of the principal, as hereinafter provided, leaving no issue of said Alexander Kenneth Nicol entitled to receive any of the income under this Trust, and/or should all of said issue die after said Alexander Kenneth Nicol's death and before the final distribution of the principal, as hereinafter provided, then in either or both events, their share or shares of income shall be divided equally among and paid to the then surviving issue of said brother and sisters.

" The Trustee shall out of the principal sum of the Trust Estate hereby created pay said Alexander Kenneth Nicol, if so requested by him in writing three months in advance of each payment, the sum of Five Thousand Dollars, ($5000.), on November 11, 1956; Five Thousand Dollars, ($5000.), on November 11, 1961; Five Thousand Dollars, ($5000.), on November 11, 1966; Five Thousand Dollars, ($5000.), on November 11, 1971; and shall retain the remaining principal sum until twenty (20) years after the death of the last survivor of above named Henrietta Stewart Nicol, Edith Stewart, Eva Stewart, Minnie E. Nicol and Alexander Kenneth Nicol, and shall then convey, assign, transfer, set over and deliver said principal sum and undistributed income, if any, after payment of all proper charges as follows:

" One Third unto his wife, if then living and if she be also then his widow, and the remaining portion unto his surviving issue, in equal shares.

" Should he have died without leaving a wife but leaving issue, the entire Trust Estate unto said surviving issue, in equal shares.

" Should he have died leaving a wife but no issue, one quarter unto his surviving wife, if then his widow, and the remaining portion unto the then surviving issue of his said brother and sisters, in equal shares, otherwise, in event none of them be then alive, to his next of kin, then living, in equal shares.

" Should he have died leaving neither wife nor issue, the entire Trust Estate unto the then surviving issue of his said brother and sisters, in equal shares, otherwise, in event none of them be then alive, to his next of kin then living, in equal shares."

Specifically, the trustee sought to determine if the widow of the settlor was entitled to three separate payments of $5,000 each, to construe the trust indenture to determine if the word " issue " included four persons who were adults when adopted

by the settlor, and the issue of such adults, to determine whether the word " issue " means issue per capita or issue per stirpes and to make such adjudication as to the distribution of principal as was appropriate.

The court held that the adopted children of the settlor, four adults, and their descendants, were to be regarded as issue for all purposes of the trust, that the term " issue " as used means issue per stirpes, that upon the death of the settlor, which occurred on July 1, 1961, one third of the net income of the trust became distributable to his widow, Frances M. Nicol, until her death or remarriage, and two thirds to the issue per stirpes of the settlor, that is, the four adopted children.

It was also held that the widow was vested upon the settlor's death with one third of the principal of the trust subject to its being divested by her remarriage or death prior to the termination of the trust and upon the termination of such trust, which it was determined would be July 1, 1981, two thirds of the principal, or all if the widow had died or remarried, was to be distributed to the settlor's issue then living per stirpes. The court also concluded that the widow was entitled to the $5,000 requested by the settlor before his death which sum was to have been paid on November 11, 1961.

In 1935, Alexander R. Nicol, a retired businessman and father of the settlor, personally drafted four irrevocable *inter vivos* trusts. These trusts were identical in language except as to the names of the beneficiaries and the quantum of the gifts, which differed slightly. One trust was for Alexander R. Nicol, one for his wife, Minnie Nicol, executed July 22, 1935, one for his granddaughter, Muriel MacBain, and the trust for his son, Alexander Kenneth Nicol, executed October 25, 1935, with which we are here concerned. Before execution of Alexander Kenneth's trust, A. R. Nicol had submitted the indenture to counsel for the U. S. Trust Company, the trustee herein, for their review and recommendations. By letter dated October 14, 1935, such counsel made certain recommendations as a result of which changes were made as to the duration of the trust from 20 years after the death of his son to 20 years after the death of the last survivor of the son, his wife and his two aunts, primary beneficiaries of the trust. The suggestion that in all cases where the word " issue " appears the words " per stirpes " should be appended was not followed.

Alexander Kenneth, the settlor, was born November 10, 1911 and was approximately 24 years of age in 1935 and a student at the University of California. The instrument was taken by A. R. Nicol to California and executed there on October 25,

1935 by Alexander Kenneth Nicol who, at that time, did not read the instrument. July 2, 1939 the settlor married Frances, now his widow, who at the time was a divorcee with four children, ages 15, 17, 18 and 19. As a result of a disability of the settlor no children were born of the union. Apparently the settlor treated the stepchildren as his own. In 1951 the settlor's father, A. R. Nicol, died without making any provision for the stepchildren of the settlor or their issue. July 2, 1952 in California the settlor adopted his four stepchildren, then adults of the ages 28, 30, 31 and 32. At that time the settlor was age 41 and each of the stepchildren had children of their own.

When the settlor died on July 1, 1961 he left surviving him his widow Frances, the four adult adopted children and their 13 infant children, all of whom are the respondents here. There were also 10 infant descendants of his brother and two sisters who are the appellants here. The other income beneficiaries of the trust, the settlor's mother and his two aunts, predeceased the settlor. As a result the trust by its terms will terminate July 1, 1981. The trust indenture provided that the instrument is to be construed and regulated by the laws of the State of New Jersey.

The basic question on this appeal is whether the word "issue" includes adopted children, adults at the time of such adoption, and their descendants, and if so, whether per stirpes or per capita. A second question arises from the fact that by letter dated January 25, 1961 the settlor had requested of the trustee $5,000 which he was supposed to receive on November 11, 1961. He had requested that the money be used for the purchase of stock and have the stock transferred " in my wife and my personal stock." He also requested "if anything should happen to me before November 10, 1961, my sincere wish is that you will see to it that my wife receive the full amount of the $5,000." The settlor died prior to the payment and the court held that his widow was entitled to that $5,000. That determination is now up for review in this appeal.

Concerning the settlor's knowledge of the terms of the trust instrument and his intention, or lack of intention, as to possible issue, reference is again made to the letter of January 25, 1961. In that letter he stated " As you know, my wife and children will not benefit fully from this trust. I had nothing to do with the drawing of this trust. My father drew the trust to his own choice at the time I was attending the University of California. He made a visit out there at that time and gave me the last sheet of the trust to sign. It was not until many years later that I had the opportunity to read the trust; but, it was much

too late to do anything about it. I was a single man at that time. Since my marriage twenty-one years ago, I have tried to break this trust so my wife and children could inherit the full amount.'' In an earlier letter of January 14, 1953 addressed to the trustee by the settlor he informed them of his adoption of the four children and directed their attention to the fifth subparagraph of paragraph First of the Trust Agreement of 1935. In that letter he stated that at the time of the creation of the trust it was his intention that if he ever had any children, natural or adopted, they would receive the income of the trust and that the term '' issue '' was broader than the word '' children '' and would include adopted children. Thus we have two contrasting and contradictory expressions of intent by the settlor, both, it will be noted, after the fact. The rule relating to the admissibility of such evidence is governed by New York law (*United States Mtge. & Trust Co.* v. *Ruggles,* 258 N. Y. 32, 40) which would allow such evidence (*Matter of Rudolph,* 123 N. Y. S. 2d 731; 9 Wigmore, Evidence [3d ed.], § 2458, p. 181).

'' The judicial interpretive function is to find the meaning of the testator as expressed in the language used, considered in the light of the attendant circumstances, and effectuate it.'' (*Matter of Fisler,* 133 N. J. Eq. 421, 422 [1943]; *Fidelity Union Trust Co.* v. *Potter,* 8 N. J. Super. 533, 539.) If we substitute the word '' settlor '' for '' testator '' the task before us is aptly described.

Since Kenneth Nicol, the settlor, was unaware of the contents of the trust instrument at the time he executed it, it is a reasonable, and perhaps the only possible assumption, that he assented to its terms in light of then existing or applicable law. Certainly no reservation was expressly made. It is the intention which exists at the time of execution which controls, not one thereafter formulated and not expressed in the instrument.

In 1935, Kenneth was approximately 24 years of age, unmarried and a student. Nowhere in the record does it appear that he had the slightest inkling of the existence of a physical disability which would prevent his fathering children. The course of ordinary experience in human conduct is that he entertained the normal hope or average expectation that upon marriage and in the natural order of events children, if desired, would be a resulting product. Thus, the circumstances attendant upon the execution of the instrument are of assistance primarily as negativing any intent beyond that to be gleaned from the instrument.

The settlor's father, A. R. Nicol, set up four irrevocable trusts in 1935, one in his own name, one in his wife's name, one

for his granddaughter, and one for his son Kenneth. The particular scheme evident was a desire to protect and provide for the persons designated, all members related to A. R. Nicol by the blood. In a separate and different proceeding involving the construction of the term " issue " in the A. R. Nicol trust (*Matter of Nicol,* 3 Misc 2d 898), the court concluded there was nothing to show the settlor (A. R. Nicol) " had any intention of including the adopted children or their descendants within the orbit of his bounty by the trust " (p. 909). The adults were adopted by Kenneth one year after the death of his father A. R. Nicol and 17 years after the death of his mother Minnie E. Nicol. The facts and circumstances surrounding the creation of the A. R. Nicol trust and that of the Minnie E. Nicol trust (*Matter of Nicol,* 39 Misc 2d 674, 677, affd. 24 A D 2d 555) failed to establish that adopted children were intended to be included in the term " issue " as used in the respective instruments.

The trust instrument of Kenneth refers repeatedly to " issue " or " surviving issue " of the settlor and provides if the settlor dies leaving a wife but no issue, the widow, so long as she maintains that status, is to receive one half of the income, and the remaining portion is to be divided equally among the surviving issue of Kenneth's one brother and two sisters. Such persons are also to take in the event Kenneth died without leaving a wife or surviving issue. Looking again to the circumstances surrounding the creation of the trust and bearing in mind that the three trust indentures (i.e., for Kenneth, A. R. Nicol and Minnie E. Nicol), were drafted in similar language and executed in a relatively short space of time, that all seemed to follow a pattern of expressed concern for the immediate family and, under then existing law and rules of judicial construction, their lineal descendants, nothing appears in the trust indenture of Kenneth to indicate that the words " issue " or " surviving issue " as used were intended to include those not of the blood. Nothing, in that respect, sets this trust apart or distinguishes it from those of A. R. Nicol and Minnie E. Nicol, previously construed by our courts to exclude the adopted children of Kenneth (*Matter of Nicol,* 3 Misc 2d 898; *Matter of Nicol,* 39 Misc 2d 674, affd. 24 A D 2d 555). If Kenneth, the settlor, had an intention not in accord with the view of his father, and in fact did not consider " issue " synonymous with descendants, he nowhere evidenced it in the instrument.

In *Matter of Fisler* (*supra,* p. 423) the court, construing the term " lawful issue " in the construction of a will, said " While ever controlled by the context, the word ' issue ' signifies, *prima facie,* ' heirs of the body; ' and the statute ordains that an

adopted child ' shall not be capable of taking property expressly limited to the heirs of the body of the adopting parent or parents, nor property coming from the collateral kindred of such adopting parent or parents by right of representation.' R. S. 1937, 9:3–9 ''. The sections quoted refer to minor children. A similar limitation as to adopted adults is found in paragraph a of subdivision c of section 2A:22–3 of the New Jersey Statutes Annotated. As to minor children in the section quoted the New Jersey Legislature has made certain changes. By section 14 of chapter 264 of the Laws of 1953 (N. J. Stat. Ann., 9:3–30), effective January 1, 1954, it provided '' In the construction of any testamentary or other document executed subsequent to the effective date of this act, an adopted child shall be deemed lawful issue of the adopting parent unless such document shall otherwise provide.'' However, no such change was made in the statute with reference to the adoption of adults, so that there is no statutory presumption that they are lawful issue. In *Matter of Wehrhane* (23 N. J. 205 [1957]), it was held that the term '' issue '' in a will did not include an adopted child. In that case the testatrix provided that the residue of her estate be placed in trust and named her husband Henry Wehrhane a life beneficiary. Upon his death income was to be paid to their only child Dorothy for life, and upon her daughter's death '' to the issue of my * * * daughter per stirpes absolutely '' (p. 207). Dorothy married in 1915 and up to the time of the death of her mother had no children, and none thereafter. In 1931, about six years after the death of her mother, she adopted an eight-year-old son. Dorothy divorced and remarried and at the time of the trial was receiving the trust income. This proceeding was instituted for the construction of her mother's will. The court observed that the word '' issue '' '' was employed with something more than a passing consideration. The term in its normal usage connotes progeny to the remotest degree [case cited] or descendants [case cited] and because it is not confined in this sense to one generation it emphasizes the thought of kinship or blood relationship '' (pp. 208–209).

We hold, both from the context and the circumstances surrounding the execution of the instrument, that the term '' issue '' or '' surviving issue '' was not intended to and does not include the adult adopted children of the settlor Kenneth Nicol. As indicated earlier, a subsidiary question is whether the issue will take per capita or per stirpes. The only evidence in the record on that point is that A. R. Nicol, after being advised to insert the words '' per stirpes '' after '' issue '' or '' surviving issue '', failed or neglected to do so. Ordinarily since the instrument

is being construed as directed under New Jersey law, we would hold that a per capita distribution was intended. (*Hoyt* v. *Orcutt*, 1 N. J. 454; *The Plainfield Trust Co.* v. *Hagedorn*, 28 N. J. 483; *Matter of Fisler*, 133 N. J. Eq. 421.) However, in the construction of two of the companion trusts drawn by A. R. Nicol and in one of which he was the settlor (*Matter of Nicol*, 3 Misc 2d 898), his wife Minnie being the settlor of the other (*Matter of Nicol*, 39 Misc 2d 674, affd. 24 A D 2d 555) our court in construing the language of the instrument, particularly with reference to the term "issue", held that the distribution should be on a per stirpes and not a per capita basis. We so hold on constraint of such cases, particularly in light of the similarity of the trust documents, and the circumstances surrounding their execution. In all of these instruments the pattern and content are similar save as to the designation of the beneficiaries and the quantum of the gifts.

The remaining point with which we are concerned is whether the widow was entitled to the $5,000, payment of which was directed to be made to her. The trust contained a spendthrift provision which indicated that A. R. Nicol wished to prevent the dissipation of either the principal or the income of the trust and to assure that Kenneth would always have some means of support. Kenneth as settlor of the trust obviously acquiesced in and adopted this view. Paragraph Tenth provides "The beneficiaries of this trust are hereby restrained from selling, transferring, assigning, hypothecating or otherwise disposing of their respective interest in either the principal or income to be derived or to accrue therefrom or any part thereof, at any time before the said principal or income shall come into their possession under the terms of this Trust, and said respective interests of said beneficiaries in the principal or income of the said Trust as aforesaid, shall not be assignable, and shall not be subject to the claims of creditors of the said beneficiaries, or any of them." This provision would seem to apply to and limit the provision under paragraph First giving him the right to request and later receive the sum of $5,000 on stated dates. Paragraph Tenth expressly prevents assignment. (See, also, *Trust Company of N. J.* v. *Gardner*, 133 N. J. Eq. 436.) Moreover, the trustee, by the terms of the trust, was authorized to invest and reinvest the property and securities subject to the approval of Alexander R. Nicol so long as he lived, and thereafter the trustee was so empowered in its sole discretion to invest and reinvest. No power of supervision or control was vested in Kenneth.

We have not referred to or discussed the validity or invalidity of the adult adoptions, or contrasted the California and New Jersey laws with respect thereto. In light of the conclusions reached and dispositions made that is unnecessary.

Accordingly, the judgment appealed from should be reversed on the law as herein indicated, with costs and disbursements to all parties filing briefs, payable out of the principal of the trust.

RABIN, J. (concurring in part). I concur in the opinion of the majority except insofar as it decides that the adopted children of the settlor shall not be " considered as issue " within the meaning of the trust indenture. I believe they should be so considered. In coming to that conclusion I rest on that portion of the opinion of Mr. Justice KLEIN addressed to that aspect of the case. (See N. Y. L. J., May 6, 1963, p. 17, col. 1.)

BOTEIN, P. J., BREITEL and McNALLY, JJ., concur with STEVENS, J.; RABIN, J., concurs in part in opinion.

Judgment reversed on the law as indicated in the opinion by STEVENS, J., with $50 costs to all parties filing briefs, payable out of the principal of the trust. Settle order on notice.