The donor of the trust, Edward K. Simpson, a resident of New Jersey, executed the trust agreement on February 12, 1921, in New Jersey. The initial trustee, and the successor trustee, are New York banking institutions. The trust assets have at all times been kept in New York. The trust agreement is silent as to which State’s law shall control in interpreting the terms of the agreement. Under these circumstances, New York law applies (Hutchison v Ross, 262 NY 381).
The trust agreement, in pertinent part, provides that the donor shall be income beneficiary for life, and,
"Upon the death of the said Donor leaving him surviving a widow and a child or children and/or the issue of any child or children who shall have predeceased the Donor, the Trustee shall set apart for the benefit of said widow, as hereinafter provided, one-half of the trust estate and shall pay over to the surviving child or children and/or issue of such deceased child or children, per stirpes, the other one-half of the trust estate herein created.
"Upon the death of the widow, the Trustee shall pay over to the child or children and/or issue of any deceased child or children of the Donor, per stirpes, that part of the trust estate *729 which shall have been held by the Trustee for the benefit of the widow.
"If the Donor dies leaving him surviving no child or children or issue of deceased child or children but leaving a widow him surviving, then the Trustee shall hold, during the lifetime of the widow, the entire trust estate herein created, and shall pay over to her during her lifetime all of the income therefrom. At the death of such widow, the trust herein created shall cease and the Trustee shall transfer and pay over the entire trust estate, as the same then exists, to and among such persons as would then answer the description of the Donor’s next of kin according to the present law of the State of New Jersey.
"Nothing herein contained, however, shall be deemed to suspend the power of alienation of property beyond the limit prescribed by the laws of the State of New York.”
When the trust agreement was executed, the donor had been married for six months to Marion G. Simpson. After the agreement was executed, they had two natural children, both of whom predeceased the donor without issue.
In 1945, with his wife’s consent, the donor adopted Robert William Foy, then 30 years old, in the State of New Jersey. Foy was apparently an Army friend of the donor’s deceased son. The decree of adoption provided that "the rights, duties, privileges and relations between the said Robert William Foy and the said Edward Kingsbury Simpson, his parent by adoption, are and shall thenceforth in all respects be the same, including the right of inheritance, as if the said Robert William Foy had been born to Edward Kingsbury Simpson, his said adopted parent, in lawful wedlock.”
Foy died in 1950, leaving two natural and two adopted children. The donor died on December 3, 1974, survived by his widow, Marion G. Simpson, and the four children of Robert Foy.
Three questions are raised by the trustee with respect to the disposition of the trust. The first is whether the life estate created for the benefit of the donor’s "widow” — without specifying in the agreement that the "widow” referred to was intended to mean the donor’s then wife — is void as violative of the rule against perpetuities. The second is whether Robert Foy, an adopted son, qualifies as the sole "child” under the agreement. The third is whether Foy’s adopted children qualify as the "issue” of a deceased child.
*730 Section 11 of the Personal Property Law as in effect in 1921, provided that: "The absolute ownership of personal property shall not be suspended by any limitation or condition, for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition.”
In applying this rule to determine the validity of a future estate, the court may not look to events subsequent to the date of the agreement, but is bound by the language of the agreement, and the intent of the grantor (Matter of Roe, 281 NY 541). Thus, if at the time of the execution of the agreement, there existed a possible contingency which might cause the suspension of absolute ownership of the property to extend beyond two lives then in being, the future estate is void.
And, at first blush, it would appear that such a contingency exists here. For the agreement does not refer to Marion G. Simpson by name, but merely refers to the donor’s "widow”. At the time the agreement was executed, it was possible that the donor would not be married to Marion G. Simpson at his death, and that his "widow” might be one not yet born in 1921. In that event, the second measuring life would not have been "in being” on the date of the instrument, and the future estate would be void under section 11 (see Matter of Milhau, 151 Misc 283; Matter of Brombacher, 203 Misc 1086; Schettler v Smith, 41 NY 328).
The rule is otherwise, however, when a particular person occupies the position referred to in the agreement at the time it is executed. Thus, in Matter of Schluechterer (90 NYS2d 867, 868), the testator’s will provided for "the division of his residuary estate into four equal shares with the income of the entire fund payable to his mother for her life and then in quarterly shares to his sister and three brothers, Joseph, Gustav and Theodore, for their respective lives with the remainders of the trusts for Gustav and Theodore payable to the survivors or their issue, subject to life estates in favor of the surviving wives of the secondary income beneficiaries”.
The issue before the court in that case was the validity of the "life estates in favor of the surviving wives.” Gustav was married at the time the will was written, while Theodore was not. Theodore married subsequent to the testator’s death. The court held that the life estate of Gustav’s widow was valid, while that of Theodore’s widow was not, for, "Only when the *731 will admits of a contrary intention, not expressed here, will the court depart from the rule that a gift to a 'wife’ of a beneficiary is construed as a gift to a person who occupies that relation at the time of its execution” (Matter of Schluechterer, supra, p 870; see, also, Matter of Friend, 283 NY 200; Matter of Irving, 74 NYS2d 165; Matter of Wainwright, 82 NYS2d 345; Matter of Wilson, 64 Misc 2d 208; Meeker v Draffen, 201 NY 205; Williams v Alt, 226 NY 283).
Additionally, giving effect to the obvious intent of the donor impels a finding that he intended the terms "wife” and "widow” in the agreement to refer to Marion G. Simpson. The agreement was executed at a time when the donor and Mrs. Simpson were newlyweds. And the "Whereas” clause of the agreement states the donor’s desire to "make suitable and permanent provision for the support and maintenance of himself, his wife and of such lawful issue as he may have, and to place all of them beyond financial want and disaster.” Clearly, he was not referring to some hypothetical future wife, but specifically to his bride of six months. Moreover, the agreement provides that nothing contained therein "shall be deemed to suspend the power of alienation of property beyond the limit prescribed by the laws of the State of New York.”
Accordingly, the court agrees with Mrs. Simpson and the trustee that the life estate created for the benefit of Marion G. Simpson as the donor’s widow does not violate the rule against perpetuities, and is valid. It should be noted that one of the children of Robert Foy has appeared in this application, and has not disputed the validity of the life estate for the benefit of Marion G. Simpson.
The second issue raised in this proceeding is whether Robert Foy qualifies as a "child” of the donor pursuant to the agreement. Section 114 of the Domestic Relations Law, as in effect in 1921, provided, in pertinent part, that: "The foster parent or parents and the person adopted sustain toward each other the legal relation of parent and child, and have all the rights and are subject to all the duties of that relation, including the right of inheritance from each other * * * and such right of inheritance extends to the heirs and next of kin of the person adopted, and such heirs and next of kin shall be the same as if he were the legitimate child of the person adopting but as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the person adopted is *732 not deemed the child of the foster parent so as to defeat the rights of remaindermen.
Again, at first blush, it would appear that the statute invalidates the interest of Robert Foy. For, if he qualifies as a "child” under the agreement, he would be the only "child”, and, but for his existence as a "child”, the assets of the trust would pass to "remaindermen”, namely, "the Donor’s next of kin according to the present law of the State of New Jersey.”
Here, too, however, the courts have engrafted an exception to the statutory provision. Since the reason for the statute is to protect against fraud on the rights of remaindermen "through an adoption for the very purpose of cutting out a remainder” (Matter of Walter, 270 NY 201, 206), it has been held that where the adoption is by the grantor himself, the purpose of the statute is not served, and hence the statute does not apply (Matter of Leask, 197 NY 193, 196; Pross v Anson, 273 App Div 860, affd 298 NY 718; Matter of Sands [Barbarita], 20 Misc 2d 647).
In her brief on this issue, Mrs. Simpson does not dispute the learning of these cases, and does not urge that Robert Foy’s rights as a "child” are defeated by former section 114. She does argue, however, that the term "child” in the trust agreement could not have been intended by the donor to include an adult thereafter adopted, since, in 1921, New Jersey law did not permit adoption of an adult. This argument, however, is without merit. Even had adoption of adults been permitted under New Jersey law at the time of execution, it is most unlikely that, in using the word "child”, the donor, then a young newlywed, envisaged the likelihood of his adopting an adult. But, what may have been in the donor’s mind, and what the state of the law was at the time the agreement was executed is, in this instance, not critical. When Robert Foy was adopted, with Mrs. Simpson’s consent, that adoption was sanctioned by law, and implicit in the adoption is the acknowledgment that Foy’s rights would be, for all purposes, "as if the said Robert William Foy had been born to Edward Kingsbury Simpson, his said adopted parent, in lawful wedlock”.
The court therefore finds Robert Foy to be a "child” of the donor under the agreement, and Foy’s "issue” are entitled to take his share thereunder.
The final question is whether Foy’s adopted children may be considered his "issue” under the agreement. As the trustee *733 suggests, without opposition from Mrs. Simpson, the decision of the Court of Appeals in Matter of Park (15 NY2d 413), mandates a holding that such adopted children do constitute "issue”. There, in a matter virtually identical to the instant case, the court held that adopted children share equally with natural children when rights accrue to their parent’s "issue”.
Accordingly, the court holds that the income interest in favor of Edward K. Simpson’s widow, Marion G. Simpson, does not violate the rule against perpetuities, and that each of the children of Robert William Foy, both natural and adopted, may take under the subject trust indenture as the issue of a child who predeceased Edward K. Simpson. Therefore, one half of the trust property shall be held in trust for the life of the widow and the remainder thereof shall be distributed in equal shares to the natural and adopted children of Robert William Foy living at the death of said widow, the issue of any such child who is then deceased to take per stirpes. The remaining one half of the trust property shall be distributed in equal shares to the natural and adopted children of Robert William Foy living at the death of Edward K. Simpson.
The court commends counsel for the trustee, for its thorough and impartial treatment of the issues presented in this matter; counsel’s exhaustive brief has been of great assistance to the court.
Settle judgment, including provisions for the judicial settlement of the intermediate account of Chemical Bank, as trustee, and for the payment of counsel fees and disbursements as shown in the account submitted herewith.