(611 P 2d 599)

No. 50,571

In the Matter of the Estate of John W. Fortney, Deceased.

Opinion filed May 23, 1980.

*Don W. Noah,* of Noah & Harrison, P.A., of Beloit, for appellants.

*Fred Swoyer,* of Swoyer & Simms, of Belleville, for appellees Lee R. Stanford, Executor; The Trinity United Methodist Church and The First United Methodist Church.

*Howard Engleman,* of Hampton, Royce, Engleman & Nelson, of Salina, for appellee Lloyd E. Amspacker.

Before ABBOTT, P.J., SWINEHART and MEYER, JJ.

ABBOTT, J.: This is an appeal from a district court order striking four quarters of land from the inventory of the estate of John W. Fortney and denying the appellants' petition for allowance of demand. The issue involved concerns the construction of the Last Will and Testament of Asa Fortney and Adaline Fortney, John's parents. The appellants are the descendants of the brothers and

sisters of Asa and Adaline Fortney who claim status as remaindermen under the will of Asa and Adaline Fortney. Appellee Lloyd E. Amspacker is the nephew of John W. Fortney's wife, and Amspacker claims status as an heir under the will of Asa and Adaline Fortney by reason of his adoption by John W. Fortney. Amspacker was 65 years of age and Fortney was 90 years of age when the adoption took place in 1975. The remaining appellees—the executor of John W. Fortney's estate, John's widow, The Trinity United Methodist Church and The First United Methodist Church—claim status as devisees named in John's will. The district court construed the will of Asa and Adaline Fortney and held that Lloyd E. Amspacker was the owner of the real estate by virtue of his being an "heir by adoption" of John W. Fortney and thus qualified to take the property under the will. Appellants appeal, the primary thrust of their appeal being that Amspacker was not qualified to take under the Fortney will.

On September 29, 1922, Asa Fortney and his wife, Adaline Fortney, executed their last will and testament. Each gave the other a life estate with full power of disposition. The will then goes on to dispose of all the property remaining upon the death of the survivor as follows:

"Fourth, We, Asa Fortney and Adaline Fortney, give, devise and bequeath, subject to the above bequests, all our remaining estate, both real and personal in whatever it may consist, or wherever situated at the time of both our decease to our beloved children share and share alike, Elizabeth E. Fortney and John W. Fortney, with all the rights of ownership to sell, or dispose of the same, and at the death of either of them all real and personal estate interests to go to the surviving one, except they have children in which case they would receive the share of their parents absolutely.

"Fifth, And if said Elizabeth E. Fortney, and John W. Fortney, both die *without heirs by birth, or by adoption,* then the properties both real and personal which is not exhausted in whatever it may consist or wherever situated, we then devise and bequeath the same to the heirs that is the children of Elisha Fortney, George Fortney, Aquilla A. Fortney, Harriet Jeferys, John Fortney, Mary Kirk, Sarah A. Shay, Elisha McKinney, Priscilla A. Weaver, Martha J. Bucklew, Alice Orr and H. Fletcher McKinney." (Emphasis added.)

Asa Fortney died on June 1, 1930. The four quarters of land in question were inventoried in Asa's estate. Adaline elected to take under the will. Adaline Fortney died on September 25, 1951. Her estate inventory listed only personal property. Elizabeth Fortney died on November 11, 1966; she had never married and had no children by birth or adoption.

On February 24, 1975, John W. Fortney and Millie C. Am-

spacker Fortney, his wife of 58 years, adopted Lloyd E. Am-
spacker, Millie's 65-year-old nephew. John W. Fortney died on
March 19, 1977. His will and two codicils were admitted to
probate. The four quarters of land are inventoried and appraised
as part of the assets of his estate. The appellants filed their claim
to the four quarters. Lloyd E. Amspacker also filed his claim to
the real estate. For reasons not material to this appeal, the execu-
tor, the widow and the two churches contended that the four
quarters belonged to John W. Fortney, and they have not ap-
pealed from the trial court's decision that Lloyd E. Amspacker is
the owner of the four quarters listed in the inventory of the John
W. Fortney estate.

Appellants allege that the trial judge committed reversible error
when he failed to allow a published history of Cloud County into
evidence to show Asa's background at the time of the execution of
Asa's and Adaline's will. Appellants contend that the court had to
stand in Asa Fortney's shoes in order to interpret what he meant
by his will; that the history of Cloud County ostensibly would
show Asa to be an educated man—he had been a preacher and
was clerk of the court. The trial judge denied admission of the
book based on its lack of materiality. A trial judge has wide
discretion in making that determination. One who claims abuse
of discretion has the burden of proving that contention, and when
reasonable persons could differ as to the propriety of the action
taken by the trial court, it cannot be said that the trial court
abused its discretion. *McColm v. Stegman*, 3 Kan. App. 2d 416,
Syl. ¶ 2, 596 P.2d 167 (1979). Failure to allow the admission of a
general history of Asa's background into evidence when other
more reliable evidence of the circumstances surrounding the
execution of the will were available was not an abuse of discre-
tion.

The crux of this case, as we see it, involves the intent of Asa
Fortney when he executed the will on September 29, 1922. The
general rule is stated by the Supreme Court in *In re Estate of
Lehner,* 219 Kan. 100, 102-03, 547 P.2d 365 (1976):

"Proper resolution of the issue raised by the parties depends on the construction
to be given to the controlling language found in the will. We are mindful of the
oft-stated rule which requires the court in construing the provisions of a will to
place itself in the shoes of the testator at the time he made the will and determine
as best it can the purpose and intentions he endeavored to convey by the language
used. (*Wallace v. Magie,* 214 Kan. 481, 522 P.2d 989; *Beall v. Hardie,* 177 Kan.

353, 279 P.2d 276; *Baldwin v. Hambleton,* 196 Kan. 353, 411 P.2d 626; *Parsons v. Smith, Trustee,* 190 Kan. 569, 376 P.2d 899.) The tools in aid of our search for the testator's intention are the language contained within the four corners of the document, plus any extraneous circumstances surrounding its execution which assist in understanding his true intent and purpose. (*Parsons v. Smith, Trustee,* supra.) Since each case must stand on its own peculiar facts any guidance to be gained by a review of prior cases is necessarily of a limited nature. We should attempt to give effect to the intention of the testator as we perceive it."

The record discloses that Asa owned the four quarters in question. The trial court determined that Adaline elected to take a life estate in the land pursuant to the will. No one appeals from that finding. Thus, we are of the opinion it is immaterial whether or not the will is joint, mutual and contractual. As to the real estate, the will speaks as of the date of Asa's death. Assuming Adaline chose not to dispose of the land, there is nothing she could have done that would have had any effect on the ultimate disposition and her knowledge of any changes in the law or her desire to change her will would have no effect on property passing under Asa's will.

Appellants argue that Asa could not have intended or contemplated that one of his children might adopt an adult. There is no question that Asa intended the property to go to John or Elizabeth or their "heirs by birth or by adoption." The question is whether Asa intended that an adopted adult be included in that phrase. Adoptions and the legal consequences of adoption are controlled by statute. There was no right of adoption under the common law. 2 Am. Jur. 2d, Adoption § 2. Prior to 1939 there was no statutory authority to adopt an adult (L. 1939, ch. 180, § 173; G.S. 1935, 59-2101, [1939 Supp.] now K.S.A. 59-2101). Thus, Asa executed his will over 16 years before it was possible to adopt an adult in Kansas, and he died some nine years before that time.

There is considerable conflict among other jurisdictions with respect to those who are to take under or through an instrument whether a statute that has been enacted after an estate has vested subject to divestment can affect the intention of the person who executed the instrument. See for example the annotations in 21 A.L.R.3d 1012, 1038; 166 A.L.R. 150; 133 A.L.R. 597, 598; 117 A.L.R. 691, 714; and 2 A.L.R. 930, 975; and the cases of *Williams v. Ward,* 15 Cal. App. 3d 381, 93 Cal. Rptr. 107 (1971); *Abramovic v. Brunken,* 16 Cal. App. 3d 719, 94 Cal. Rptr. 303 (1971); *Simpson (NY Trust Co.),* 90 Misc. 2d 727, 395 N.Y.S.2d 917

(1977). We deem it unnecessary to discuss the various issues and set forth our views thereon as this case appears to us to be controlled by an existing Kansas Supreme Court case that we are duty-bound to follow. In *Meek v. Ames,* 177 Kan. 565, 280 P.2d 957 (1955), one Benjamine Reeder died, leaving a will by which he devised a half section of land to his daughter subject to a life estate in his wife. The will provided that at his daughter's death, all of the land should become the absolute property of his daughter's children. At the time of the execution of Benjamine Reeder's will and at the time of his death, Kansas law, as in this case, permitted only the adoption of *minor* children which at that time was age eighteèn years for females. Three years after Benjamin's death, the age of majority for females was extended from age eighteen to age twenty-one. Some twenty years later, Benjamin's daughter adopted a nineteen-year-old girl. On appeal, it was argued that Benjamin did not intend to allow the adoption of a nineteen-year-old at the time of his death since at that time it was not legally possible to adopt a person of that age. In rejecting this position, the Supreme Court reasoned:

"He did not limit the devise to the issue of [his daughter] Maude's body, but used the general term children. It must be assumed the testator knew that any child adopted by his daughter would have the same rights of inheritance from and under him as a natural child (*Riley v. Day,* 88 Kan. 503, 129 Pac. 524 [decided in 1913]). It must also be assumed that even thòugh he knew at the time he made his will that adoptions were *of minors only* and that the age of minority extended only to eighteen years for females, he also knew that *both statutes* were subject to change at any time by the legislature. Knowing these things he provided in his will that the remainder after the death of his daughter should go to her children living at the time of her death. Insofar as Mary Jane Jeffress [the adopted child] is concerned she was not born until after the will had been made, the testator had died, and the statute of 1917 increasing the period of minority for females to the age of 21 years had been passed. The contention of appellants cannot be sustained." *Meek v. Ames,* 177 Kan. at 571 (emphasis added).

Application of this identical logic controls the determination of the issue here. It was not possible to adopt an adult at the time of Asa's death, but it was clearly proper in 1975 when John actually adopted his wife's adult nephew. If the *Meek* decision had been limited to holding that a testator must anticipate the age of majority may be raised or lowered, the case would be distinguishable. We are unwilling, however, to attempt to distinguish *Meek* from the case at bar in view of the explicit language in *Meek* that the testator had to know the legislature might change

*both* the age of majority and the limitation that only minors could be adopted. It seems to us that in planning the ultimate disposition of one's property, a testator should be entitled to rely on the law as it exists during his lifetime. Nevertheless, in the absence of some indication that our Supreme Court would reach a different conclusion if faced with this same set of facts, we are duty-bound to follow what we perceive to be controlling authority. Appellants cite *Shannep v. Strong,* 160 Kan. 206, 160 P.2d 683 (1945), for the proposition that a testator when executing his will could not have had in mind a law that passed years later. In *Shannep,* the testator created a charitable trust that provided for income to a local church. The church eventually was disbanded and ceased to exist. The testator's wife claimed the corpus under the residuary clause of the will, of which she was sole legatee and devisee. A religious institution that was the parent affiliate of the local church intervened and asserted its rights to corpus under the doctrine of cy-pres. The Court held that the intent of the testator was to create a particular charity to the local church rather than a general charity to the parent affiliate and therefore refused to apply cy-pres. The parent church argued that a statute enacted after the testator's death, providing that the parent would succeed to property abandoned by the local affiliate, was applicable. Commenting on this contention, the Court held:

"Appellant contends that under the provisions of G.S. 1943 Supp. 17-1716d it is entitled to the income from the property in question. That statute pertains to appellant's right to 'abandoned property' of the local church. The local church never had title to or the possession of the land, the corpus of the trust, and hence it cannot well be said to have abandoned the land. It is at least doubtful whether the statute was intended to apply to the instant case. Appellant cites no authorities from other states with similar statutes to support its contention and our limited time for research has disclosed none. In any event the will in the instant case was executed in 1926, probated in 1927, and the statute relied upon was not passed until 1939. It frequently is said that a person is presumed to know the law and that contracts are made in contemplation of existing law which becomes a part of the contract. But, assuming for the moment the statute is applicable, can we say the testator's intent in making a will must be determined by the provisions of a law not enacted until thirteen years after the execution of his will? But that is only part of the inquiry. Can we say that statute rendered or was intended to render nugatory the residuary clause of the will? We do not think so." *Shannep v. Strong,* 160 Kan. at 215.

Although *Shannep* lends some support to appellants' attack, it is factually distinguishable from the case at bar while *Meek* is

closely analogous. In addition, *Shannep* was decided ten years earlier than *Meek*. Moreover, the Court's reasoning in *Shannep* is dicta since the Court there plainly held that the statute did *not* apply and its limited discussion of intent hinged on the hypothetical *assumption* that the statute applied. Dictum which goes beyond the points decided in a particular case may be respected, but it should not control a subsequent case when the precise point is presented, argued and considered by the court. *Flax v. Kansas Turnpike Authority,* 226 Kan. 1, Syl. ¶ 1, 596 P.2d 446 (1979).

Appellants suggest we extend the *quasi-trustee* relationship, as typified by *Windscheffel v. Wright,* 187 Kan. 678, 360 P.2d 178 (1961), to bar the life tenant from defeating the remaindermen's interest by adopting an adult for the sole purpose of passing property to him when the life tenant had no testamentary power to devise the property to that person. Asa's will permits John to adopt an heir. Appellants concede he could have adopted a minor child and divested the remaindermen. Having been given a specific power to adopt by the terms of the will, the exercise of that power cannot amount to a breach of his fiduciary duties to the appellants who held their remainder interest subject to divestment. See generally *Beall v. Hardie,* 177 Kan. 353, 357, 279 P.2d 276 (1955).

Appellants next contend that adopted adults do not have the rights of inheritance that adopted minor children have because there are no specific provisions in the Kansas statutes giving adopted adults any rights whatsoever. We disagree.

K.S.A. 1979 Supp. 59-2103 provides that an adopted "child" has the same rights of person and property as a natural child of the person adopting would have. In our opinion, an adopted adult falls within the definition of "child" as contemplated by that statute.

In *American Fidelity Ins. Co. v. Employers Mut. Cas. Co.,* 3 Kan. App. 2d 245, 593 P.2d 14 (1979), this Court restated several rules of statutory construction:

> " 'In construing a statute, legislative intent is to be determined by consideration of the entire act. The several provisions of an act, *in pari materia,* must be construed together with a view of reconciling and bringing them into workable harmony and giving effect to the entire statute if it is reasonably possible to do so.' *Easom v. Farmers Insurance Co.,* 221 Kan. 415, Syl. ¶ 3, 560 P.2d 117 (1977).
> " '.  .  . Statutes relating to the same subject, although enacted at different

times, are *in pari materia* and should be construed together.' *Claflin v. Walsh,* 212 Kan. 1, Syl. ¶ 6, 509 P.2d 1130 (1973)." 3 Kan. App. 2d at 248.

K.S.A. 59-2101 sheds some light on the definition of "child" where it states:

"Any adult, or husband and wife jointly, may adopt any minor or adult as his or her child in the manner herein provided; but one spouse cannot do so without the consent of the other."

In our opinion, this statute merely confirms what common sense dictates; anyone of any age can be a child of another as long as a blood or legal relationship exists. One does not lose his or her status as a child of its parents when the age of majority is reached. In addition, to construe the adoption statutes to mean that adult adoptees have no rights would make adopting an adult a meaningless ritual. Certainly the legislature would not have intended that result.

Despite appellants' attacks on the wisdom of allowing an adult adoptee full rights of inheritance, this Court is bound to follow the plain language of the statute. When a statute is plain and unambiguous, this Court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. *Brinkmeyer v. City of Wichita,* 223 Kan. 393, 397, 573 P.2d 1044 (1978). By so doing, this Court also falls in line with the generally accepted rule found in Annot., 21 A.L.R.3d 1012, 1017:

"As a general rule, an adopted adult may be considered as an heir or issue of the adoptive parent for purposes of inheritance from the adoptive parent, and the rights of the adopted adult in this respect are largely the same as the rights of an adopted minor child."

See also 2 Am. Jur. 2d, Adoption § 11.

Appellants also challenge the validity of Lloyd Amspacker's adoption because his surname was not changed to Fortney as they contend is required by K.S.A. 1979 Supp. 59-2103. Their argument is without merit; that statute provides in pertinent part:

"Any child adopted as herein provided shall assume the surname of the person or persons by whom the child is adopted except that the court in its discretion may permit a different surname when requested by the person or persons adopting the child."

Appellants fail to meet their burden of showing that neither the Fortneys nor Amspacker requested that Amspacker be allowed to keep his old surname. Moreover, appellants cannot now colla-

terally attack the adoption decree in a probate proceeding on the basis they allege. *Jones v. Jones,* 215 Kan. 102, 523 P.2d 743, *cert. denied* 419 U.S. 1032 (1974).

Affirmed.