The FIRST NATIONAL BANK OF DUBUQUE, As Trustee Under Agreement With Viola B. James, Appellee,

v.

Evelyn M. MACKEY, Appellee,

and

John B. Wathen, Richard H. Wathen, and Viola Wathen Sheehan, Appellants.

No. 69129.

Supreme Court of Iowa.

Sept. 21, 1983.

Rehearing Denied Oct. 13, 1983.

Kenneth S. Handmaker of Middleton & Reutlinger, Louisville, Ky., and Leo A. McCarthy and Chadwyn D. Cox of Reynolds, Kenline, Breitbach, McCarthy, Clemens, McKay & Nigg, Dubuque, for appellants.

Francis J. O'Connor of O'Connor, Thomas, Hammer, Bertsch & Norby, Dubuque, for appellee First Nat. Bank of Dubuque.

Allan J. Carew and Laura J. Hahn of Fuerste, Carew, Coyle, Juergens & Sudmeier, Dubuque, for appellee Evelyn M. Mackey.

Considered by REYNOLDSON, C.J., and HARRIS, McCORMICK, SCHULTZ and CARTER, JJ.

McCORMICK, Justice.

We must decide here whether a person adopted as an adult is necessarily a "legally adopted child" within the meaning of a trust instrument. The trial court entered summary judgment for the adopted person in this interpleader action after answering the question affirmatively. Because we give a negative answer to the question, we reverse and remand.

Viola B. James executed a trust agreement in 1953, naming plaintiff, The First National Bank of Dubuque, as trustee. She had two daughters at the time, Mary Patterson James and Viola James Wathen. The trust instrument provided that the income of the trust was to be paid to Mary during her life, and at her death the principal and any undistributed income was to be divided per stirpes among Mary's "then living descendants," and if she had none, then per stirpes among Viola James Wathen's "then living descendants." The instrument also provided: "The term 'descendant' as

herein used shall mean 'lawful issue', but shall include a 'legally adopted child'."

The settlor died in 1963, and the trust then became irrevocable. Viola James Wathen died in 1975, survived by three children, John B. Wathen, Richard H. Wathen and Viola Wathen Sheehan. Mary died in 1981, survived by Evelyn M. Mackey whom she had adopted in 1978 when she was 58 and Evelyn was 44.

The record shows Mary and Evelyn had been friends and shared an apartment in Garrison, New York at the time of the adoption. Mary was terminally ill and stated the following purpose for the adoption in the adoption papers:

> Since deponent's mother provided that a legally adopted child would be considered as a descendant, deponent desires to make provision by the adoption of EVELYN M. MACKEY, that said adoptive child will be considered a descendant of deponent under the above Trust and will receive the remaining principal of deponent's share of the Trust Fund upon the death of deponent, if EVELYN M. MACKEY survives.

The trust had substantial assets and Mary was receiving trust income of $15,000 per year at the time of the adoption.

The trustee brought the present interpleader action to determine the rights of Evelyn and the three children of Viola James Wathen to the approximately $180,000 in trust assets. All four persons asserted a right to the assets. Evelyn then moved for summary judgment, alleging that, as a matter of law, she was Mary's "living descendant" within the meaning of the trust agreement. The summary judgment record consisted of the pleadings, trust agreement, adoption record, certain answers to interrogatories, and an affidavit by the attorney for the resisting parties alleging the existence of a genuine issue of material fact concerning the settlor's intent and Evelyn's conduct in seeking to defeat it. The attorney also requested an opportunity to complete discovery.

After oral hearing, the trial court sustained the motion for summary judgment, and this appeal by John B. Wathen, Richard H. Wathen and Viola Wathen Sheehan followed.

▮ Principles governing summary judgment are well established. The burden is on the movant to demonstrate that no genuine issue of material fact exists. *Enochs v. City of Des Moines,* 314 N.W.2d 378, 379–80 (Iowa 1982). When the evidence supporting the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidence is presented. *Mead v. Lane,* 203 N.W.2d 305, 307 (Iowa 1972). Even when the case is in equity, the appellate court decides only legal issues in an appeal from summary judgment. *Moser v. Thorp Sales Corp.,* 312 N.W.2d 881, 886 (Iowa 1981). We have no occasion to decide whether this case presents the prematurity problem of *Carter v. Jernigan,* 227 N.W.2d 131 (Iowa 1975).

▮ Analysis of the question here starts with general principles in this court's decision in *Elliott v. Hiddleson,* 303 N.W.2d 140 (Iowa 1981). The goal is to ascertain the settlor's intent. It is to be determined, if possible, from the language of the trust instrument, the scheme of distribution, and the facts and circumstances surrounding its execution. Technical rules of construction are resorted to only if the settlor's intent remains uncertain after that inquiry. *Id.* at 142. In this case the trial court held as a matter of law that the settlor intended a person adopted as an adult to take as a descendant of a trust beneficiary. The court believed this conclusion was reinforced by the rule of construction adopted in *Elliott.*

The trust instrument in the present case was executed before *Elliott* was decided. At that time the relevant canon of construction was the "stranger to the adoption rule": When an instrument was executed before an adoption by a stranger to the adoption, a class gift to a child or children did not include an adopted child except when a contrary intent appeared from other language or circumstances. *Id.* at 143.

Thus, when the present instrument was executed, it was doubtful whether the terms "descendant" or "lawful issue" would be construed to include an adopted child. *See, e.g., In re Trust of Nicol,* 39 Misc.2d 674, 677, 241 N.Y.S.2d 775, 778–79 (Sup.Ct.1963); *In re Trust Indenture of Nicol,* 3 Misc.2d 898, 910–12, 148 N.Y.S.2d 854, 866–68 (Sup. Ct.1956). The definition of descendant in the present instrument was obviously placed there to avoid that result. The only question is whether the settlor intended to include persons adopted as adults by providing that "descendant" meant "lawful issue" and would include a "legally adopted child."

■ No evidence was adduced to show that the settlor actually considered the question. Therefore, unless the term "legally adopted child" must be deemed to include all adopted persons, her intent cannot be ascertained without resort to rules of construction. We believe the term is uncertain. Its meaning depends on whether "child" refers to the adoptee's status before or after the adoption. If it refers to the adoptee's status before the adoption, it would include only persons adopted as minors. If it refers to the adoptee's legal relationship after the adoption, it would include adults. The term is given the latter meaning in the adoption statute heavily relied on by the trial court in this case. *See* Iowa Code § 600.6 (1950). If the settlor was referring to the adoptee's status before the adoption, however, Evelyn was a "legally adopted adult," not a "legally adopted child." We conclude that we must resort to rules of construction.

This brings us back to *Elliott.* In that case the court rejected the stranger to the adoption rule, adding:

> In rejecting the rule, we do not preclude the right of a testator to distinguish between natural and adopted children as objects of his bounty. We merely require that such intent be shown. Unless a contrary intent appears, we will presume that a testator intended to treat adopted children in the same manner as natural children. In so doing, however, we will not permit the conscious use of adoption as a means of upsetting a transferor's normal expectations.

*Id.* at 144–45. The appealing parties allege this case is one involving "the conscious use of adoption as a means of upsetting a transferor's normal expectations." No doubt exists that Evelyn's adoption was motivated by Mary's desire to make her the sole beneficiary of the trust assets. We must decide whether this, nevertheless, would be within the normal expectations of a settlor in the position of the settlor in this case.

The limitation in the *Elliott* rule originated in a concern that adoption is susceptible to abuse as a means of affecting succession:

> The usual circumstantial assurances against such motivation are absent, for example, in adult adoptions and normal responsibilities of parenthood need not be assumed. The recent case in which a husband adopted his wife, with the apparent purpose of enabling her to take the remainder interest under a trust established for him, is admittedly distressing.

Halbach, *The Rights of Adopted Children Under Class Gifts,* 50 Iowa L.Rev. 971, 988 (1965). In *Elliott* this court took Professor Halbach's suggestion that "in formulating new rules of construction to reflect a general preference for equal treatment of natural and adopted children, some provision should be made to insure against the conscious use of adoption to upset a transferor's normal expectations." *Id.* at 989. We share Halbach's view that in referring to the "children of A" a transferor does not ordinarily think of technical, legal relationships but of "some vague expectation or general notion concerning a type of actual, personal relationship" so that "the legal relationship created by adoption alone would not satisfy his expectation without that special kind of personal involvement which is typically associated with the parent-child relationship." *Id.* We believe this concept is applicable in determining the settlor's intent in the present case.

Other jurisdictions have taken essentially three positions in deciding the effect of

adult adoptions. The positions are sometimes affected by statute. One line of cases presumptively includes all adult adoptees in class gifts to children. *See In re Estate of Fortney,* 5 Kan.App.2d 14, 20–21, 611 P.2d 599, 604–05 (1980); *Evans v. McCoy,* 291 Md. 562, 582–84, 436 A.2d 436, 446–47 (1981); *Delaney v. First National Bank of Albuquerque,* 73 N.M. 192, 197–98, 386 P.2d 711, 715 (1963); *In re Trust of Simpson,* 90 Misc.2d 727, 732, 395 N.Y.S.2d 917, 921 (Sup. Ct.1977). Others presumptively exclude all adult adoptees. *See In re Estate of Nicol,* 152 N.J.Super. 308, 319–20, 377 A.2d 1201, 1207–08 (App.Div.1977); *In re Estate of Tafel,* 449 Pa. 442, 454, 296 A.2d 797, 803 (1972). A third line of cases allows exceptions to presumptive inclusion or exclusion depending on particular circumstances. *See In re Estate of Pittman,* 104 Cal.App.3d 288, 294–95, 163 Cal.Rptr. 527, 530–31 (1980); *Chichester v. Wilmington Trust Co.,* 377 A.2d 11, 13–15 (Del.1977); *Minary v. Citizens Fidelity Bank & Trust Co.,* 419 S.W.2d 340, 343–44 (Ky.1967).

The *Elliott* rule puts Iowa in the third category. Adopted persons are presumptively included unless the evidence shows the adoption would not be within the normal expectations of the transferor. A transferor's normal expectation, moreover, is that an adopter and an adopted adult will have had an in loco parentis relationship. Therefore we hold that an adopted adult will not ordinarily be included in a class gift from a stranger to the adoption as a "child" or "legally adopted child" unless the adult was taken into the adoptive home as a minor and reared as a member of the adopting parent's family.

The summary judgment record does not show a loco parentis relationship existed between Mary Patterson James and Evelyn M. Mackey when Evelyn was a child. Therefore the adoption of Evelyn by Mary was not shown to have been within the normal expectations of a settlor in the position of Viola B. James. The trial court thus erred in holding that Evelyn was Mary's surviving descendant within the meaning of the trust instrument.

Because the issue is not presented, we do not decide whether Evelyn should be held as a matter of law to be excluded as a trust beneficiary. We reverse and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

All Justices concur except CARTER, J., who dissents.

CARTER, Justice (dissenting).

The majority finds the word "child" within the phrase "legally adopted child" as used in the trust instrument to be ambiguous and concludes that our rules of construction require reversal of the grant of summary judgment. Because I do not find the term "legally adopted child" ambiguous, I am compelled to dissent.

The majority concedes that under the law existing at the time the instrument was executed, which the settlor is presumed to have been aware of, "legally adopted child" would include both those who are minors and those who are adults at the time of adoption. This was the import of Iowa Code section 600.6 (1950). Thus, the meaning of the term under Iowa law at the relevant time appears to have been well settled. The term is not ambiguous; it indicates a status resulting from a legal proceeding, *see Wooster v. Iowa State Tax Commission,* 230 Iowa 797, 298 N.W. 922 (1941), regardless of the age of the adoptee.

The majority suggests that the language of the trust instrument is ambiguous concerning whether the reference to "child" means before or after the adoption. Such ambiguity is manufactured by improperly considering the word "child" out of context of the whole document. The phrase to be interpreted is not "child" but rather "legally adopted child." One cannot be a legally adopted child until *after* the adoption. When considered as a whole, there is no uncertainty in the language employed and rules of construction are not required.

The majority's reliance on the rules of construction contained in *Elliott v. Hiddle-*

*son,* 303 N.W.2d 140 (Iowa 1981), is inappropriate. The settlor is her own lexicographer when she speaks in words of unmistakable legal meaning. In Hallbach, *The Rights of Adopted Children Under Class Gifts,* 50 Iowa L.Rev. 971 (1965), the author makes clear that his proposed revision to the stranger to the adoption rule is to be applied only in the absence of controlling language in the document. *Id.* at 981. He states: "Of course, if an intention to include or exclude adopted children is expressed in the instrument, the intention will be given effect." *Id.* at 975.

The result reached by the majority on the present record suggests that it is deciding the case based upon its belief that the settlor did not really intend the meaning which the language of the trust instrument clearly conveys rather than upon any uncertainty in the language which was employed. In so doing, it acts without any evidence in the record to suggest that the settlor intended other than that which the writing provides. There are times when judges face a strong temptation to assume that others intend that which the judges would have intended had they been in the same situation. Because such assumption will often prove to be false, such temptations must be resisted. The assumption should be that if the meaning of the language is clear, it expresses that which was intended. I would affirm the trial court.